**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BREAKER VIEW ASSOCIATION, INC.<br>12 Pennsylvania Drive<br>Conneaut, OH 44113, | ) ) ) ) ) ) | CASE NO.:<br><br>JUDGE: |
| Plaintiff | ) ) ) ) | **COMPLAINT**<br><br>(Jury Demand Endorsed Hereon) |
| and | ) ) | |
| ROBBIN D. GARCIA, Individually and as<br>Trustee for Garcia Trust III<br>2044 Random Road, Unit 405<br>Cleveland, OH 44106-2240 | ) ) ) ) ) ) | |
| and | ) ) | |
| THOMAS D. NORDQUIST Living Trust<br>By Thomas D. Nordquist, Trustee<br>45439 Metz Road<br>Columbiana, OH  44408 | ) ) ) ) ) ) | |
| Alternate Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| DONALD E. NELSON<br>PATRICIA J. NELSON<br>9 Pennsylvania Drive<br>Conneaut, OH 44030 | ) ) ) ) ) ) | |
| GREGORY S. WUNDERLE<br>LORI A. WUNDERLE<br>450 Reimer Road<br>Wadsworth, OH 44281 | ) ) ) ) ) | |

|  |  |
|---|---|
| ROBERT C. JOHNSON<br>EILEEN A. JOHNSON<br>19138 Mitchell Avenue<br>Rocky River, Ohio 44116<br><br>and<br><br>ANDREW J. POMPEII<br>dba INDUSTRIAL WELDING &<br>INSTALLATION, INC.<br>270 State Street<br>Struthers, OH 44471<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

NOW COME Plaintiffs, the Breaker View Association, Inc. ("Association"), Robbin D. Garcia, individually and as Trustee for Garcia Trust III ("Garcia Trust"), and the Thomas D. Nordquist Living Trust, by and through Thomas D. Nordquist, Trustee, (collectively, "Plaintiffs"), by and through counsel, and for their Complaint against Defendants, Donald E. & Patricia J. Nelson, Gregory A. & Lori A. Wunderle and Robert C. & Eileen A. Johnson and Andrew J. Pompeii dba Industrial Welding & Installation, Inc. (collectively, "Defendants") allege, aver, and state as follows:

## PARTIES

1.     Plaintiff Association is a nonprofit corporation organized and existing under the laws of the State of Ohio, the purpose of which is to operate and administer the affairs of the Association, a lakefront community located in the City of Conneaut, County of Ashtabula and State of Ohio, consisting of thirty-three (33) individually owned lots and common property streets, park area, bank slopes and beach area.

2

2.     Plaintiff Robbin D. Garcia resides at 2044 Random Road, Unit 405, Cleveland, OH 44106-22240, and brings this action in her individual capacity and as Trustee of Garcia Trust III as owner of several parcels within Breaker View Association.

3.     Plaintiff Thomas D. Nordquist Living Trust, by and through Thomas D. Nordquist, Trustee, who resides at 45439 Metz Road, Columbiana, OH  44408, brings this action as owner of several parcels within the Breaker View Association.

4.     Defendants Nelson reside at 9 Pennsylvania Drive in the City of Conneaut, County of Ashtabula and State of Ohio within the Breaker View Association, Permanent Parcel no. 12-224-00-135.

5.     Defendants Wunderle reside at 450 Reimer Road in Wadsworth, Ohio 44281, and own real property located at 24 Ohio Drive in the City of Conneaut, County of Ashtabula and State of Ohio within the Breaker View Association, Permanent Parcel No. 12-224-00-120.

6.     Defendants Johnson reside at 19138 Mitchell Avenue, Rocky River, Ohio 44116, and own real property located at 8 Pennsylvania Drive in the City of Conneaut, County of Ashtabula and State of Ohio within the Breaker View Association, Permanent Parcel No. 12-224-00-136.

7.     Defendants Nelson, Wunderle and Johnson are sometimes referred to herein collectively as the "Owner Defendants."

8.     Each of the lots owned by Defendants are situated on the edge of a bluff overlooking the park area, bank slope and beachfront common property of the Association.

9.     Defendant Andrew J. Pompeii ("Pompeii") resides at 7357 Sugartree Drive, Youngstown, OH 44512, and does business as Industrial Welding & Installation, Inc. ("Industrial"), located at 2790 State Street, Struthers, OH  44471.  Industrial does not appear on

the records of the Ohio Secretary of State as a registered or authorized corporation licensed to do business in this state.

## JURISDICTION AND VENUE

10.     Jurisdiction and venue are proper in this Court because each of the Defendants resides in the Northern District of Ohio, has violated both state and federal laws, and the amount in controversy exceeds $75,000.

11.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C.§ 1331 (federal question) because this action arises under the laws of the United States, including:  the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321, *et seq.*; the Coastal Zone Management Act (CZMA), 16 U.S.C. §§ 1451, *et seq.*; the Clean Water Act (CWA), 33 U.S.C. §§ 1251 *et seq.*; and the Corps' regulations, 33 C.F.R. §§ 335-338.

12.     Venue over this action is proper in this District pursuant to 28 U.S.C. § 1391(e)(3), which establishes venue is in this District because the action sought to be reviewed takes place in this District and affects residents, natural resources, waters of the State  of Ohio, and lands within the State of Ohio where dredging will occur and fill material is deposited.

13.     Venue is also proper in this Court as the activities of Defendants occurred in this jurisdiction and the injury to Plaintiffs occurred here, and their losses exceed $75,000.

## STATUTORY BACKGROUND
## NATIONAL ENVIRONMENTAL POLICY ACT

14.     Congress enacted the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.*, to promote harmony between humans and their environment and to prevent or eliminate damage to the environment. NEPA requires contractors applying for erosion control permits to consider the effects of proposed erosion control work on the environment. A detailed environmental impact statement is required that includes presentation of the action's adverse

4

effects, alternatives to the actions, and the action's long term effects.

15.     Pursuant to 40 C.F.R. § 1506.2, federal agencies must cooperate with states to the fullest extent on environmental studies, and address inconsistencies between the proposed federal action and state or local plans.

## CLEAN WATER ACT

16.     The Clean Water Act, 33 U.S.C. §§ 1251 *et seq*., (CWA) administered by the U.S. Environmental Protection Agency (USEPA), was enacted to protect and improve the quality of the nation's waters.  The CWA recognizes that water quality is a primary state function and requires any person seeking to conduct a project subject that involves the placement of dredged material into navigable waters to obtain a state water quality certification through which a state certifies that the person will comply with the state's water quality standards and may impose any conditions required for compliance with state standards. 33 U.S.C. § 1341.

17.     The CWA requires any person conducting an erosion project, including private landowners and contractors, to comply with state water quality standards.  33 U.S.C. § 1323; 33 U.S.C. § 1341; 33 C.F.R. § 336.1.

18.     When the CWA was amended in 1977, the Senate Committee on Environment and Public Works specifically addressed the obligation to comply with state water quality standards when performing erosion control activities. Section 404 of the Clean Water Act mandates that all erosion control activities be conducted in compliance with applicable state water quality standards, and all other State substantive and procedural requirements.

19.     The USEPA also has jurisdiction over environmental impacts from erosion control. 42 U.S.C. §4321 *et seq*.

## COASTAL ZONE MANAGEMENT ACT

20.     The Coastal Zone Management Act (CZMA), 16 U.S.C. §§ 1451 *et seq.*, was enacted to ensure coordination and consistency between federal, state, local and private actions in coastal zones. The CZMA authorizes and encourages states to develop coastal management programs, which allow states to protect their coastal zones by providing a federally authorized vehicle for the states to regulate the activities that occur within their coastal zones. The CZMA requires federal activities within or that affect a state's coastal zone to be consistent to the maximum extent practicable with that state's coastal management program.

21.     The CZMA provides an important coordination tool for states with federally approved coastal management programs.  The Federal Consistency provision requires that federal actions having reasonably foreseeable effects on any land or water use or natural resource of Ohio's designated coastal zone must be consistent with the enforceable policies of the Ohio Coastal Management Program, which receive federal approval by the National Oceanic and Atmospheric Administration.(NOAA). These enforceable policies contain provisions that are legally binding. The Ohio Revised Code legislative history of the CZMA indicates that Congress intended for the CZMA to give states federally authorized control over their coastal zones. Specifically, the Senate Commerce Committee reported that —the intent of this legislation is to enhance state authority by encouraging and assisting the states to assume planning and regulatory powers over their coastal zones.... [I]t is essential that federal agencies administer their programs, including development projects, consistent with the states' coastal zone management program. S.Rep. 92-753.

22.     Federal license/permit activities (15 CFR part 30, Subpart D) – activities performed by a non-federal entity requiring a federal permit or other federal authorizations

6

apply to any applicant for a federal permit, license, or other authorizations for any activity having reasonably foreseeable effects on the uses or resources of Ohio's designated coastal area. To initiate a Federal Consistency Review, the permit applicant must submit a Consistency Certificate and all other necessary information to the federal agency with their permit application. The Ohio Coastal Management Program then agrees, agrees with conditions, or objects to the Consistency Certification. In the event of an objection, the applicant can appeal the decision.

23.     Pursuant to the CZMA, before undertaking a project in a state's coastal zone, federal agencies must ensure that the project is consistent with that state's coastal management program to the maximum extent practicable and must provide that state with a consistency determination. 16 U.S.C. § 1456. The state may then issue the federal agency a concurrence, a conditional concurrence, or an objection to the federal agency's consistency determination. 15 C.F.R. §§ 930.41, 930.41.43.

24.     The CZMA is implemented by the Department of Commerce through the National Oceanic and Atmospheric Administration (NOAA). NOAA's regulations define maximum extent practicable as fully consistent with the enforceable policies of management programs unless full consistency is prohibited by existing law applicable to the federal agency. 15 CFR § 930.32.

**CORPS' REGULATIONS**

25.     Section 404 of The Clean Water Act, 33 U.S.C. §§ 1251 *et seq*. and Section 10 of the Rivers and Harbors Act, administered by the Corps, regulate the discharge of dredged or fill material into the water of the United States, including wetlands. Permits are required for the construction, excavation, deposition of materials in, over or under navigable waters of the United States, and for the discharge of dredged or fill material into the waters of the United States. The National Pollution Discharge Elimination System (NPDS) permit programs under Section 402 of the

CWA is the principle erosion control regulation. The Corps may require permits for compliance with the Corps' regulations, commonly referred to as the Federal Standard, sets forth the policies and procedures required to ensure prudent operation and maintenance activities. 33 C.F.R. § 335.1. Once the relative priority of a maintenance project is determined and Congress allocates funds, it is the responsibility of the Corps to carry out the work by selecting the dredged material disposal alternative(s) which is the least costly and consistent with sound engineering practices and meets the environmental standards established by the 404(b)(1) evaluation process. 33 C.F.R. § 335.7. The Corps is required to fully consider all practicable and reasonable alternatives on an equal basis. 33 C.F.R. § 335.4.

## OHIO DEPARTMENT OF NATURAL RESOURCES

26.     A Shore Structure Pemit (R.C. §1506.40) is required from the Ohio Department of Natural Resources (ODNR) to construct a beach, groin, revetment, seawall, pier, breakwater, jetty or other structure to arrest or control erosion, wave action, or inundation along or near Ohio's Lake Erie shoreline.

27.     A Submerged Lands Lease (R.C.§1506.10 and §1506.11) must be entered into with the State of Ohio to pace improvements on Lake Erie submerged lands. A Submerged Lands Lease is required for an improvement, or portion thereof, that occupies land lakeward of the water's edge prior to placement of any fill including structures. To enter into a Submerged Lands Lease, the local authority must first pass a resolution declaring that the submerged lands specified in the application are not needed for any public improvements and that their use complies with local waterfront plans.

28.     A Coastal Erosion Area (CEA) Permit  (R.C. §1506.07) also may be required.  A CEA Permit is required to erect, construct, or redevelop a permanent structure if the structure, or a portion thereof, is located within Ohio's Lake Erie Coastal Erosion Area.

29.     Under Section 401 of the federal Clean Water Act (33 U.S.C 1341), a Water Quality Certification may be required from the Ohio Environmental Protection Agency (OEPS). A Water Quality Certification is required for any placement of dredged or fill material (including armor stone) into the waters of the United States, including Lake Erie.

30.     Defendants did not comply with any of the foregoing federal, state or local laws or regulations, all of which will be referred to in this Verified Complaint collectively as the "Regulations."  It is Plaintiffs' contention in this Verified Complaint that Defendants violated each and every applicable Regulation as an element of each cause of action set forth below.

**FACTUAL BACKGROUND**

31.     The Breaker View Plat consists of thirty-three (33) individually owned lots, and properties owned in common, including streets, park areas, bank slopes and beach areas.  While some of the homes in Breaker View are occupied year-round, most are second homes used primarily in the summer months for recreational purposes.

32.     The Association was formed by an Agreement dated June 22, 1928 ("Agreement"), establishing the Association, and setting forth rules for the governance and maintenance of common property of the Association. The Agreement is recorded in the Ashtabula County Recorder Miscellaneous Records Volume 3, beginning at Page 289.  A copy of the Agreement is attached as Exhibit A.

33.     The benefits and burdens of the common property affected by the Agreement are set forth in a "Warranty Deed in Conveyance of Easement" document dated November 23,

1928, and recorded at Ashtabula County Records of Deeds, Volume 304, beginning at Page 308 ("Easement"), a copy of which is attached hereto as Exhibit B. The Easement incorporates the Agreement by reference. A drawing showing the Breaker View Plat, including the park area, bank slopes and beach area, is attached as Exhibit C.

34.    As shown on the drawing, the bank slope area had walking paths to the beach area and picnic areas for all members to use and enjoy.

35.    The Association functioned as mandated in the Easement from 1928 until sometime in the 1970's when, for reasons that are unknown, the Association became dormant. Upon information and belief, the streets constituting common property of the Association, Ohio Drive and Pennsylvania Drive, were given over to the City of Conneaut, which has maintained the streets since that time.  The park area, bank slope and beach area remain common property of the Association.

36.    The Easement is a covenant that runs with the land and is incorporated into each of 33 deeds for owners of real property at Breaker View.

37.    Between the 1970's and 2022, the common property of the Association was neglected and poorly maintained by volunteers, usually members of the Association at their own expense.

38.    Between the 1970's and 2022, much of the park area on the bluff overlooking Lake Erie was lost to naturally occurring erosion.

39.    Over the years, Defendants have unilaterally caused fill material to be dumped on the bank slope area in an attempt to stop, or at least slow down, the naturally occurring erosion process.  Upon information and belief, some or all of the fill material that Defendants dumped on the common property of the Association was contaminated.

40.     Some of the Owner Defendants have deck structures that are built on or over the bank slope area common property of the Association.

41.     In the fall of 2021, the owners of Breaker View had a series of meetings to discuss maintenance issues regarding common property of the Association. It was determined that the Association needed to be reinstated to carry forth maintenance of, and improvements to, the common property of Breaker View.

42.     Beginning in the fall of 2021, representatives of Breaker View started investigating the possibility of doing repair work to the bank slope area, part of which had eroded over the years and needed reinforcement to prevent further erosion.

43.     In December 2021, the majority of owners of Breaker View took steps to reinstate the Association and to name a *de facto* board of directors to run the Association. Owners Thomas Nordquist, Robinn Garcia and Victor Divincenzo took action to form a board of directors and to reinstate the Association. Thomas Nordquist, Richard Garcia and Victor Divincenzo are the *de facto* board members until the owners of Breaker View can meet to adopt a Declaration and Bylaws for the governance of Breaker View.

44.     In January 2022, Articles of Incorporation were filed for Breaker View Association, Inc., a copy of which is attached hereto as Exhibit D.

45.     On January 27, 2022, a letter was sent by the Association's counsel to all owners at Breaker View advising them that the Association had been reinstated and incorporated.

46.     In February 2022, Defendants retained counsel to inform the Association that they do not recognize an Association and disavow the Association. A copy of counsel's correspondence is attached as Exhibit E. This position is based on purported meeting minutes of the Breaker View Association from 1978 in which the majority of members allegedly took

11

action to dissolve the Association.  However, the purported meeting minutes merely authorize counsel to take actions to dissolve the Association, which actions were never taken. Further, the action, even if taken, does not affect the common property of the Association.

47.     In March 2022, the Association obtained insurance for the common property of the Association to protect it from any liability it might have in the event of loss or injury.

48.     On May 6, 2022, counsel for the Association was informed by counsel for Defendants that Defendants had unilaterally contracted with Defendant Pompeii dba Industrial Welding & Installation, Inc. for the reinforcement of the bank slope areas in front of their respective properties only ("Work").

49.     On or about March 7, 2022, Defendants Wunderle, Nelson and Johnson, in their individual capacities and without authority to do so, contracted with Defendant Pompeii dba Industrial for purported erosion control on the slope and beach area along about 255 feet of common property of the Association in front of their respective properties only.  A copy of the contract is attached as Exhibit F.

50.     The Work completely eliminated the beach area.

51.     The Work eliminated walking paths that provided access to the beach area and picnic area previously enjoyed by all owners within Breaker View. The Work removed a section of the bank slope contiguous to the waterfront/beach.

52.     Once the Work commenced and excavation started, the bank slope and beach area common property of the Association was forever altered.  The Association's efforts to stop the Work were rejected by a state court.

53.     Defendants Nelson, Wunderle and Johnson live on the bluff that overlooks the bank slope, beach area and Lake Erie. The Owner Defendants do not recognize the Association

and erroneously believe the common property is part of their separate parcels. None of the legal descriptions of any of the Defendants' parcels include the common area bank slope areas or beachfront areas.

54. The Association's common property bank slope and beach area are in a Coastal Erosion Area ("CEA").

55. Neither the Owner Defendants nor Pompeii commissioned any engineering studies before commencing Work on the slope area

56. Defendant Pompeii, the contractor for the Work, did not obtain authorizations or permits from the City of Conneaut, Office of Coastal Management, United States Environmental Protection Agency, Army Corps of Engineers, Office of Coastal Management, Ohio Department of Natural Resources, Ohio Environmental Protection Agency, or any other public authority with jurisdiction over the Lake Erie shoreline and contiguous land.

57. The Work began on or about May 9, 2022. Heavy excavation, earth moving, lift equipment and construction materials were delivered to the Breaker View site during the week of May 2, 2022. The timeline for completing the Work is believed to have been six to eight weeks, extending well into the summer season, and disrupting the quiet enjoyment and use of the common area picnic areas, walking paths leading to the beach area, and use of the beach area for members of the Association.

58. Pompeii was not authorized by Plaintiffs to come upon the common property of the Association to perform the Work.

59. Defendants Nelson, Wunderle and Johnson were not authorized as individual lot owners to contract with Pompeii for the Work, or to permit Pompeii upon the common property of the Association for any purpose.

13

60.     Pompeii brought heavy construction equipment upon the embankment and slope area of the Association, removing vegetation and creating roadways from the top of the embankment to the beach area of the Association.

61.     Removal of the vegetation on the slope area destroyed a root system that stabilized the slope from the embankment to the beach area.

62.     The heavy construction equipment Pompeii brought upon the slope area after removing vegetation loosened the soil on the slope area causing it to become unstable.

63.     Pompeii caused more than 13,000 tons of concrete fill material to be dumped over the embankment onto the slope area after the vegetation had been removed and the slope destabilized, causing the slope area to become further destabilized due to the weight of the concrete fill material rolling down the slope area.

64.     Pompeii caused more than 3,000 tons of armor stone to be dumped over the embankment onto the slope area after the vegetation had been removed and the slope area destabilized, causing the slope area to become further destabilized due to the weight of the armor stones rolling down the slope area

65.     An unspecified number of tons of concrete fill material and armor stone was placed on the beach area from the lake onto the common property of the Association.

66.     Pennsylvania Drive and Ohio Drive each end at the top of the embankment. Pompeii, without authority to do so, caused the drainage system for Pennsylvania Drive and Ohio Drive to be re-routed to the slope area via flex tubing causing further erosion from the top of the embankment down to the beach area.

14

67. Pompeii brought a barge on Lake Erie to the beach area of the Association and placed concrete fill material and armor stone on the beach area removing the beach area of the Association in its entirety.

68. The Lake Erie Shore Erosion Management Plan (LESEMP) was developed by the Ohio Department of Natural Resources in partnership with the Office of Coastal Management and Division of Wildlife and Division of Geological Survey.

69. LESEMP identifies erosion areas in specific locations called "reaches," which are stretches of shoreline with similar site conditions. The subject area in which the Work was performed is within Ashtabula County Reach AC 10.

70. LESEMP has made specific recommendations for Ashtabula County Reach AC 10 extending from Penn Drive to Conneaut Harbor, including conservation of sand resources and retention of beaches, use of revetments, bluff modifications, surface water management, ground water management, and growth/removal of vegetation.

71. Defendants did not follow the recommendations of LESEMP in performing the Work, causing the Plaintiffs to suffer damage and loss.

72. R.C. §5312.13 provides that the Association is entitled to reimbursement of all legal fees and costs incurred in enforcing "…any covenant, condition, and restriction as set forth in any recorded documents to which they are subject" from owners that have violated such provisions.

## COUNT I
### (Breach of Contract -Easement )

73. Plaintiffs incorporate by reference paragraphs 1 through 72 of the Verified Complaint as if fully rewritten herein.

15

74.     The Easement states that the "…the owners of lots situated in "Breaker View" an unrecorded plat consisting of thirty three lots together with certain park, slope and beach areas (as shown by map) located in the City of Conneaut, County of Ashtabula and being part of the original Lot Number fifteen (15), Section Number two (2) Township Number fourteen (14), First Range of Connecticut Western Reserve, in consideration of signing this agreement by each of the other Parties hereto, and in consideration of the mutual benefits to be derived from the covenants and agreements hereto contained, do hereby agree, each with the other to all the provisions of the following: (1) –All of the owners of lots located in said "Breaker View" Plat shall be members of the "Breaker View Association" which association is hereby formed for the purpose of – (a) Maintaining and improving all properties owned and used in common by all property owners of Breaker View Plat, including streets, walks, picnic grounds, bank slopes and beach frontage."

75.     R.C. 5312.06 (D) states that "the owners association, through its board of directors, may do any of the following: (2) commence, …any civil…proceeding that is in the name of,…the association ,…or that involves two or more owners and relates to matters affecting the property; …(4) Enforce all provisions of the …covenants, conditions, restrictions, and articles of incorporation governing the lots, common elements…"

76.     Defendants Nelson, Wunderle and Johnson have knowingly and consistently violated relevant provisions of the Easement by their unauthorized actions on the common property such as dumping concrete and other fill material on the slope areas, some of which, upon information and belief, was contaminated, and building deck structures on and over the common property slope area. In addition, the Owner Defendants contracted with Pompeii for unauthorized Work on the common property. The Work permanently removed access to and use

16

of the common property for all owners in Breaker View.  The Work constituted a taking of common property by Defendants, who exercised dominion and control over the common property for their private use to the exclusion of all other owners that have equal access to, and rights to use the common property by virtue of the Easement.  The Work was performed by Pompeii, with assistance from the Owner Defendants, without an engineering study, obtaining necessary approvals and permits from regulatory bodies with oversight responsibilities. and in derogation of several federal and state laws as identified herein. By performing unauthorized Work, Defendants put the Association at risk of liability for violating various permit and approval processes.

77.  Defendants took common property of the Association and converted it to their personal benefit and use.  The scope of Work took away common property access for other owners in Breaker View and rendered the beach area unusable for other owners in Breaker View.

78.  The Work performed by Defendants on the common property of the Association irreparably altered the Association's common property to its current condition. The Work, although intended to stabilize the slope area, actually accelerated the erosion process, made the slope area unstable and unsafe, and completely removed the beach area .

79.  Defendants' actions showed a disregard for the safety, use, and enjoyment of other owners, and a pattern of disregarding the terms and conditions of the Easement.

80.  Not only has Defendants' conduct shown disregard for provisions of the Easement pertaining to common property, but Owner Defendants also converted common property to their private use.  Defendants' unauthorized Work on the common property of the Association has caused Plaintiffs significant damage and loss.

17

81.     As a direct and proximate result of Defendants breach of the Easement Agreement and failure to obtain legally required approvals for the Work, Plaintiffs are entitled to compensatory damages in excess of $75,000 in an amount to be proven at the trial of this matter, plus court costs and attorneys' fees.

82.     Pursuant to R.C. §5312.13, Defendants are obligated to pay Plaintiffs' legal fees and expenses incurred in enforcing the provisions of the Easement.

## COUNT II
### (Breach of Contract-Agreement)

83.     Plaintiffs incorporate by reference paragraphs 1 through 82 of the Verified Complaint as if fully rewritten herein.

84.     The Agreement is incorporated into the Easement by reference.  The Easement is a covenant that runs with the land and constitutes a contract between Plaintiffs and Defendants.

85.     Defendants are in breach of several provisions of the Agreement and Easement, as detailed herein, including performing unauthorized Work on the common areas without first obtaining permits and approvals of public agencies with jurisdiction over the subject property.

86.     Plaintiffs have fully complied with all provisions of the Agreement, Easement and R.C. Title 5312.

87.     The Association is dutybound to enforce the provisions of the Agreement and Easement to protect the common property of Breaker View for the benefit of all owners.

88.     Defendants have repeatedly and intentionally violated the use restrictions in the Agreement and Easement.

89.     Defendants have repeatedly misrepresented the scope of Work, which serves only their individual interests at the expense of all owners in Breaker View in the Unit.

90.     As a direct and proximate result of Defendants' violations of Agreement and Easement provisions, Plaintiffs have suffered damage and loss in excess of $75,000, the exact amount of which will be proven at the trial of this matter.

91.     Pursuant to R.C. §5312.13, Defendants are obligated to pay Plaintiffs' legal fees and expenses incurred in enforcing the provisions of the Agreement and Easement.

**COUNT THREE**
**(Trespass)**

92.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 91 of the Verified Complaint as if fully rewritten herein.

93.     Pompeii and Industrial were not authorized to enter upon the common property of the Association for any purpose.

94.     The Owner Defendants were not authorized to contract for the Work on the Association's common property.

95.     Pompeii and Industrial entered upon the land in possession of the Association and performed unauthorized, intentional acts (the Work), which caused significant damage and loss to the common property of the Association.

96.     Pompeii and Industrial entered upon the Association's common property with full knowledge that they were not authorized to enter the land or perform the Work.

97.     Pompeii and Industrial failed to obtain an engineering study, or any approvals or permits from any public agency with authority over the Association's shoreline property in derogation of various laws as delineated above.

98.     As a direct and proximate result of Pompeii's and Industrial's trespass, and the wrongful actions taken by them while trespassing on the common property of the Association,

19

Plaintiffs have suffered damage and loss in excess of $75,000, the exact amount of which will be proven at trial.

## COUNT FOUR
### (Conversion)

99.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 98 of the Verified Complaint as if fully rewritten.

100.    The park, bank slope and beach areas are located on common property owned by the Association, and available for use by all owners at Breaker View/members of the Association.

101.    Without authorization, the Owner Defendants wrongfully, intentionally, maliciously, and fraudulently assumed dominion and control over common areas of the Association's property.

102.    The Associations' members, the trust owners, and the owners of lots within Breaker View have an unconditional and absolute right to use the common areas, unaltered by the wrongful actions taken by Defendants.

103.    The Owner Defendants have unilaterally taken common property of the Association for their personal benefit by dumping fill material and armor stone on the slope area without authorization, building deck structures on and over common areas of the Association and contracting for Work that permanently altered the common property of the Association and attempted to convert common property to exclusive use of the Owner Defendants.

104.    As a direct and proximate result of the Owner Defendants' conversion of Association common property to their personal use, Plaintiffs have suffered losses in excess of $75,000, the exact amount of which will be proven at trial.

## COUNT FIVE
### (Negligent Construction)

105.    Plaintiffs incorporate by reference paragraphs 1 through 104 of the Verified Complaint as if fully rewritten herein.

106.    Pompeii and Industrial entered into upon the common property of the Association without authorization, as a trespasser, and performed Work that was substandard.

107.    When Pompeii and Industrial entered upon the common property of the Association they knew the Work was not authorized, but proceeded to perform the Work pursuant to a contract they had with the Owner Defendants

108.    Pompeii and Industrial had a duty to perform the Work in compliance with all federal, state and local laws, including obtaining all appropriate permits and approvals from all regulatory authorities as set forth above, which they failed to do.

109.    Pompeii and Industrial were obligated to perform the Work in compliance with all appropriate standards and best practices, which they failed to do.

110.    Pompeii and Industrial failed to get an engineering study that would have revealed essential conditions for the Work, including soil conditions, vegetation, drainage and runoff, slope stability, beach and sand conditions, existence and use of prior fill materials and similar geological and site conditions.

111.    Pompeii's and Industrial's removal of vegetation on the slope area destroyed the existing root system that stabilized the embankment and slope area, and nothing has been replanted to help stabilize the slope area.

112.    Pompeii's and Industrial's use of heavy equipment on the slope further destabilized the slope area.

113.     Pompeii and Industrial's dumping of concrete fill material and armor stone over the embankment onto the slope area further destabilized the slope area.

114.     Pompeii's and Industrial's re-routing of drainage from Pennsylvania Drive and Ohio Drive onto the slope area has accelerated erosion on the slope area and further destabilized the slope area.

115.     Pompeii's and Industrial's placement of concrete fill and armor stone on the beach area of the common property resulted in a taking of the beach area completely, rendering the area unusable or accessible as a beach, and altering the naturally occurring sand accumulation pattern.

116.     Pompeii's and Industrial's grading of the slope area destabilized the slope and removed walking pathways that provided access to the beach area.

117.     The Work performed by Pompeii and Industrial on the embankment, slope and beach areas was done negligently, in derogation of industry standards, without authorization and approval from regulators having authority over the erosion control on and over the Association's common property as delineated above.

118.     As a direct and proximate result of the numerous failures of Pompeii and Industrial to obtain an engineering study, to obtain appropriate approvals, permits and authorizations from regulators, and general failure to perform the Work in accordance with generally accepted standards, Plaintiffs have suffered damage and loss in excess of $75,000, the exact amount off which will be proven at trial

119.     As a direct and proximate result of the numerous failures of Pompeii and Industrial to obtain an engineering study, to obtain appropriate approvals, permits and authorizations from regulators, and general failure to perform the Work in accordance with

22

generally accepted standards, Plaintiffs have suffered a diminution if the value of their respective properties in an amount in excess of $75,0000, the exact amount off which will be proven at trial

### COUNT SIX
### (Nuisance)

120.    Plaintiffs incorporate by reference paragraphs 1 through 119 of the Verified Complaint as if fully rewritten herein.

121.    Plaintiffs have an interest in the private use and enjoyment of the Association's common property.

122.    Defendants unreasonably and unjustifiably interfered with Plaintiffs' use of their own property when they undertook the Work in May 2022 which interfered with Plaintiffs' use of the common property because Defendant Pompeii's/Industrial's heavy equipment blocked access to the embankment, slope area and beach during the very limited time of the year when access for recreational purposes is desirable.

123.    Defendants Work over an eight-week period beginning in May 2022 brought heavy equipment, truck after truck of concrete fill and armor stone onto the common property, blocked roadways, damaged yards, and created noise and air pollution that constituted nuisance and unreasonably and unjustifiably interfered with Plaintiffs use of the common property.

124.    As a direct and proximate result of Defendants' nuisance, Plaintiffs' quiet enjoyment and use of the common property of the Association was prevented, or severely restricted, and continues to this day because some of the Work has permanently altered the common property by removing the recreational use with alterations to the embankment, slope area and beach.

23

WHEREFORE, Plaintiffs pray for judgment on all Counts of the Verified Complaint against Defendants as follows:

1. Compensatory damages in an amount in excess of $75,000, the exact amount of which will be proven at trial.

2. All costs of enforcing provisions of the Association's Agreement, Easement and Ohio Revised Code Title 5312, including attorneys' fees and expenses of this litigation.

3. Costs of remediating the substandard work performed on the common property in an amount in excess of $75,000, the exact amount of which will be proven at trial.

4. Compensatory damages for the diminished value of the properties within Breaker View that have become devalued because of the loss of use of the common area slope and beach areas.

5. Such further relief as this Court deems reasonable, equitable, necessary, or just.

Respectfully submitted,

/s/ *Robert D. Kehoe*
Robert D. Kehoe (0017466)
rdkehoe@kehoelaw.net
Kevin P. Shannon (0084095)
kshannon@kehoelaw.net
KEHOE & ASSOCIATES, LLC
1111 Superior Avenue, East
Suite 1330
Cleveland, Ohio 44114-2541
Telephone: (216) 621-1500
Facsimile: (216) 621-1551
*Attorneys for Plaintiffs*

## **JURY DEMAND ENDORSEMENT**

Plaintiffs demand a trial upon all issues raised in the Verified Complaint by a jury composed of the maximum number of jurors permitted by law.

/s/ *Robert D. Kehoe*

Robert D. Kehoe (0017466)

## <u>VERIFICATION</u>

STATE OF OHIO           )
                              ) SS.
COUNTY OF CUYAHOGA )

I, Richard Garcia, a member of the Board of Directors of the Breaker View Association, Inc., having been first duly sworn according to law, state that I have reviewed the Verified Complaint and attest that the facts set forth therein are true and correct to the best of my knowledge and belief.

Richard Garcia, Member, Board of Directors,
Breaker View Association, Inc.

SWORN TO BEFORE ME and subscribed in my presence this 6th day of November 2025.

Robert D. Kehoe
Notary Public-State of Ohio
Commission has no expiration date
Section 147.03 R. C.

26